# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

TORRAIN KELLY,

    *Plaintiff*,

v.

RICHARD WRIGHT PUBLIC CHARTER SCHOOL *et al.*,

    *Defendants*.

Civil Action No. 16-1853 (TJK)

## MEMORANDUM OPINION

Plaintiff Torrain Kelly was employed as a teacher and administrator at Richard Wright Public Charter School for four years. In February 2016, he suffered injuries from a car accident that left him unable to work for several months, during which time he took medical leave. He asserts that from the beginning of his leave, he had trouble communicating with the school and its Chief Executive Officer, Dr. Marco Clark, about the conditions and duration of his leave. In June 2016, Kelly was ready to return to work. But he struggled to get a straight answer from Clark about when he could resume his position. And on June 30, the school informed Kelly that they would not offer him a job for the following school year.

Kelly brings claims under the federal Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, the District of Columbia Family and Medical Leave Act (DCFMLA), D.C. Code § 32-503 *et seq.*, and the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1401.01 *et seq.* He claims that the school and Clark (collectively, "Defendants") interfered with his right to take FMLA leave in a variety of ways,[1] and, by eliminating his position shortly after

---

[1] Because the FMLA and DCFMLA provide such similar benefits, the Court will use the term "FMLA leave" to describe the leave mandated by both statutes.

his FMLA leave expired, both retaliated against him and discriminated against him on the basis of his sex. Both parties have moved for summary judgment. For the reasons explained below, the Court will grant Defendants' Motion for Summary Judgment, ECF No. 20, and deny Kelly's Corrected Cross-Motion for Summary Judgment, ECF No. 67.[2]

## I. Factual and Procedural Background

In August 2012, Kelly was hired as a physical education and health teacher at the school. Pl. Facts ¶ 1. In June 2013, he left his teaching job when he was promoted to one of the school's "dean of students" positions. *Id.* ¶ 2. Throughout his tenure, he also was the school's football coach. *Id.* On February 20, 2016, Kelly was hospitalized after a car accident. Def. Facts ¶¶ 3–4. He was discharged from the hospital the next day, but he remained under his doctor's supervision and was unable to work. *Id.* ¶ 14.

Kelly texted Clark and other school employees about his predicament on the morning of February 21. Pl. Facts ¶ 5. After receiving no response from Clark, Kelly called and texted him again that evening. *Id.* Clark texted Kelly back, acknowledging Kelly's injuries and his need to take time off. *Id.* Earlier that same day, around 1:00 p.m., Clark had sent an email to all school administrators, including Kelly. ECF No. 67-2, Ex. 2. That email read, in part,

> I sit in overall dismay that I have to write this letter to a group of professionals. . . . Unfortunately I am still addressing proper business attire, professional responsibilities/etiquette and meeting deadlines with leaders. . . . Over the next

---

[2] In considering these motions, the Court considered all relevant filings, including but not limited to the following: Plaintiff's Complaint, ECF No. 1; Defendants' Motion for Summary Judgment ("Def. Mot."), ECF No. 20; Defendants' Statement of Undisputed Facts ("Def. Facts"), ECF No. 20; Plaintiff's Motion for Summary Judgment, ECF No. 27; Defendants' Response to Plaintiff's Motion for Summary Judgment, ECF No. 30; Plaintiff's Cross-Motion for Summary Judgment, ECF No. 37; Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, ECF No. 38; Defendants' Reply to Opposition to Defendants' Motion for Summary Judgment ("Def. Reply"), ECF No. 41; Defendants' Response to Plaintiff's Statement of Undisputed Material Facts, ECF No. 42; Plaintiff's Corrected Cross-Motion for Summary Judgment ("Pl. Mot."), ECF No. 67; and Plaintiff's Statement of Undisputed Material Facts and Response to Defendants' Statement of Material Facts ("Pl. Facts"), ECF No. 67-1.

> several months I will be closely evaluating the work of each of you. . . . Effective immediately! Any leader that needs to be off for any reason must be cleared by me. If you are AWOL without my clearance it will be non paid and subject to disciplinary action inclusive of termination.

*Id.*

On March 7, 2016, with Kelly still unable to return to work, Clark discussed Kelly's accident with a human resources specialist. Def. Facts ¶ 7. The human resources specialist emailed the school's FMLA policy and request form to Kelly that day. *Id.* ¶ 8. Kelly tried several times to return the completed form to the school; the school acknowledged receiving it on March 28, 2016. *Id.* ¶¶ 11–12; Pl. Facts ¶ 11.

Around the same time, Kelly sent multiple requests to the school to use his accrued paid leave while he was recovering. Def. Facts ¶ 15; Pl. Facts ¶ 15. His pay stub at the time indicated that he had accrued 546 hours of paid leave. Pl. Facts ¶ 66. By Defendants' account, Kelly's request to use this leave prompted the school to notice that the amount of accrued paid leave reflected on his pay stub—and that of every other non-teaching employee—was too high. Def. Facts ¶¶ 24–25. Although the school's leave policy imposed a cap on how many hours of paid leave could roll over from one academic year to the next, the non-teaching employees' pay stubs reflected hours well above what that cap allowed. *Id.* ¶¶ 26–32. Therefore, in April 2016, the school corrected the amount of paid leave reflected on Kelly's pay stub to 240 hours. *Id.* ¶¶ 33, 35. A few months later, in July 2016, the school similarly corrected the accrued leave amounts for the school's other non-teaching employees. *Id.* ¶ 34. Kelly denies that the downward adjustment of his paid leave was based on school policy, although he offers no specific facts that suggest another reason for the change. *See* Pl. Facts ¶¶ 24–34. Ultimately, according to Defendants, the school authorized Kelly to take the maximum amount of paid leave permitted by the policy, plus two weeks. Def. Facts ¶ 35; ECF No. 67-3, Ex. 12(j).

3

Kelly remained on FMLA leave for the rest of the school year. Def. Facts ¶ 21. His FMLA leave expired on June 10, 2016. Def. Mot. at 11. On June 14, 2016, his doctor approved his return to work. Def. Facts ¶ 23. By Kelly's account, he emailed Clark and the human resources specialist on June 14 and again on June 24 about arranging his return to work, but received no response. Pl. Mot. at 14–15. He went to the school on June 27 and found his office emptied; he also learned that he had been replaced as the football coach. *Id.* at 15. He spoke with Clark on the phone while at school, and Clark told him to leave and to arrange a meeting to discuss his return to work. *Id.* at 16–17. Clark denied that he was terminating Kelly. *Id.* at 17.

According to Defendants, the school began having financial trouble in 2015, which led Clark and other senior administrators to discuss cutbacks. Def. Facts ¶ 36. These discussions continued through the spring of 2016. *Id.* ¶ 37. Not wanting to eliminate any teaching positions, they decided to eliminate duplicative administrative positions. *Id.* ¶¶ 38–39. At the time, Kelly held one of two "dean of students" positions at the school. *Id.* ¶¶ 2, 42. The other "dean of students," a woman, had held that position at four different schools and had 30 years of experience. *Id.* ¶¶ 42–43. Because of her greater experience and lower salary, Defendants assert, they decided to eliminate Kelly's position instead of hers. Def. Mot. at 3. Kelly denies this account of the school's decision to eliminate his position, but points to no specific facts that call it into question. *See* Pl. Facts ¶¶ 36–43.

On July 1, 2016, the school sent Kelly an email informing him that he would not be offered a position for the upcoming school year. ECF No. 67-3, Ex. 12(m). The email read, in part: "Due to staff consolidations because of budget restrictions, [the school] will no longer have two Deans on staff. Therefore, there is not a position to offer you for next year." *Id.*

On September 16, 2016, Kelly filed this lawsuit.  ECF No. 1.  Defendants moved for summary judgment, ECF No. 20, and Kelly cross-moved, ECF No. 27.  Subsequently, Defendants moved to dismiss the Complaint on sovereign immunity grounds.  ECF No. 40.  The Court denied the motion to dismiss because Defendants had waived that affirmative defense by failing to raise it in their answers.  ECF No. 70.  Kelly later filed an amended cross-motion for summary judgment.  ECF No. 67.

## II. Legal Standard

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "In determining whether there are genuine factual issues in dispute, [courts] must draw all reasonable inferences in favor of the nonmoving party."  *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016) (alteration in original) (quoting *Anderson*, 477 U.S. at 247–48).

## III. Analysis

### A. Kelly's FMLA and DCFMLA Claims

The FMLA and DCFMLA provide similar benefits for certain employees who require leave from work for medical reasons.  *Badwal v. Bd. of Trustees of the Univ. of D.C.*, 139 F. Supp. 3d 295, 316–17 (D.D.C. 2015).  Under the FMLA, an eligible employee can "take twelve weeks of leave during any twelve-month period due to a serious health condition that makes the employee unable to perform the functions of her position."  *Id.* (internal quotation marks and footnotes omitted).  The DCFMLA ensures that eligible employees with a serious

5

health condition may take 16 weeks of leave during a 24-month period. *Id.* at 317. Here, the parties do not dispute that Kelly was an eligible employee under both the FMLA and the DCFMLA, or that he had a serious health condition. *See* Pl. Mot. at 21–22; Def. Mot. at 9–10.

Both statutes also make it unlawful for employers to interfere with an eligible employee's attempt to exercise his leave rights. 29 U.S.C. § 2615(a)(1); D.C. Code § 32-507(a). And both prohibit retaliation against an employee for taking leave or "opposing any practice made unlawful" by the statutes. *See* 29 U.S.C. § 2615(a)(2); D.C. Code § 32-507(b). Kelly asserts both interference and retaliation claims under the FMLA and DCFMLA.

1. **Interference**

To prevail on an interference claim, a plaintiff must show, among other things, that his "employer interfered with, restrain[ed], or denied the exercise of or the attempt to exercise, any right provided by the FMLA and that [he] was prejudiced thereby." *Gordon v. U.S. Capitol Police*, 778 F.3d 158, 164 (D.C. Cir. 2015) (quoting *McFadden v. Ballard Spahr Andrews & Ingersoll, LLP*, 611 F.3d 1, 6 (D.C. Cir. 2010)). "Prejudice to the employee is a necessary element of these claims because 29 U.S.C. § 2617(a), the statutory cause of action for FMLA violations, provides only for compensatory—and not punitive—damages." *Roseboro v. Billington*, 606 F. Supp. 2d 104, 108 (D.D.C. 2009). "An FMLA violation prejudices an employee only when the 'employee loses compensation or benefits by reason of the violation, sustains other monetary losses as a direct result of the violation, or suffers some loss in employment status remediable through appropriate equitable relief.'" *Id.* (quoting *Reed v. Buckeye Fire Equip.*, 241 F. App'x 917, 924 (4th Cir. 2007)).

Kelly asserts several types of interference claims. First, he argues that Defendants failed to timely notify him of his FMLA rights. Pl. Mot. at 21. In response, Defendants argue that even if they fell short in that regard, summary judgment is appropriate on their behalf because

6

Kelly cannot demonstrate any prejudice that was caused by the improper delay. Def. Mot. at 11. A plaintiff who receives improper notice must still show that he was prejudiced thereby in order to assert an interference claim. *See Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 39 (D.D.C. 2011). Kelly has not done so here. He took the full 16 weeks of leave to which he was entitled, so he was not prejudiced by an inability to use his leave. Nor has Kelly argued that any delay in informing him of his FMLA rights led him to make a different choice about when or how to use his FMLA leave. *See Dorsey v. Jacobson Holman, PLLC*, 476 F. App'x 861, 862 (D.C. Cir. 2012). In short, Kelly does not advance any cognizable theory about how any failure to notify him about his FMLA leave caused him prejudice.

Kelly also argues that he was improperly notified of his right to his *paid* leave. More specifically, he alleges that Defendants manipulated the form he was provided regarding his FMLA rights, thereby "block[ing] out" the "applicable conditions for use of paid leave." Pl. Mot. at 23–24. Defendants, for their part, deny that they altered the form in the way Kelly describes. Def. Reply at 11. Nonetheless, again Kelly's claim fails on the element of prejudice. He has failed to cite any authority for the proposition that such an interference claim could be based solely on prejudice to his use of *paid* leave, especially when the FMLA does not guarantee the right to paid leave. 29 U.S.C. § 2612(c). And in any event, Kelly has not pointed to any prejudice that resulted from his lack of notice. Other than Kelly's allegation, addressed below, that Defendants improperly reduced his paid leave, he does not articulate any reason why, had he been properly informed of his right to *paid* leave, he would have received any more of it before it ran out.

Second, Kelly argues that Defendants interfered with his FMLA leave by discouraging him from taking it. Pl. Mot. at 26. As evidence of such discouragement, he points to the email

Clark sent to him on February 21, 2016, as well as Clark's lack of responsiveness at the beginning of his leave. *Id.* at 26–27. But again, Kelly cannot point to any cognizable prejudice resulting from this alleged interference. To repeat: Kelly took all the FMLA leave to which he was entitled, so he cannot claim that he was wrongfully denied that leave. *See Roseboro*, 606 F. Supp. 2d at 112. And while a plaintiff who has taken all her leave can still succeed on an interference claim if her employer's interfering conduct caused her to use her leave in a way that directly caused her monetary losses, *McFadden*, 611 F.3d at 7, there is no evidence that that occurred here as a result of any discouragement by Defendants.

Third, Kelly argues that Defendants interfered with his FMLA rights by improperly reducing his accrued *paid* leave. Pl. Mot. at 25. He asserts that by reducing his paid leave, Defendants interfered with those rights because "the use of FMLA leave cannot result in the loss of any employment benefit that accrued prior to the start of an employee's leave." *Id.* In so doing, Kelly does not assert that Defendants interfered with his right to take FMLA leave itself. Instead, he asserts that Defendants interfered with his rights as set forth in 29 U.S.C. § 2614(a)(2), which states that "[t]he taking of leave . . . shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced."

Summary judgment is appropriate for Defendants on this version of Kelly's interference claim as well. Section 2614(a)(2) is only applicable to benefits to which the employee would have been entitled had she not taken FMLA leave. *See* 29 U.S.C. § 2614(a)(3)(B). And Defendants argue that Kelly was not entitled to the paid leave at issue. They have explained why his leave was adjusted downward: to correct the school's electronic payroll records, which they assert did not accurately reflect its policy concerning how much paid leave an employee could carry over from year to year. Def. Facts ¶¶ 25–34. Moreover, Defendants have submitted a

declaration by the school's Chief Operating Officer in which she explains how she discovered the error and then corrected the records relating to all non-teaching administrators' paid leave. *Id.*; Defendants' Ex. 14, Declaration of Alisha Roberts, ¶¶ 9–32. Defendants have also provided the school's handbook reflecting this policy. Defendants' Ex. 15. Kelly disputes this explanation, but he does not do so by citing any supporting facts that suggest, for example, that the policy did not exist, or that the school applied it differently to him than they did to other non-teaching staff, or that it somehow did not preclude him from carrying over the amount of paid leave at issue. In the end, he has not pointed to a single fact that supports his argument that he was entitled to the paid leave at issue. *See* Pl. Facts ¶¶ 25–34. Therefore, his conclusory assertions that he was entitled to it do not create a genuine issue of material fact precluding summary judgment for Defendants. *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Although, as a rule, statements made by the party opposing a motion for summary judgment must be accepted as true for the purpose of ruling on that motion, some statements are so conclusory as to come within an exception to that rule.").

For all the above reasons, the Court will grant summary judgment for Defendants on Plaintiff's interference claim.

### 2. Retaliation

The FMLA and DCFMLA also prohibit retaliation against employees who have taken leave or engaged in other protected activity. *Alford v. Providence Hosp.*, 945 F. Supp. 2d 98, 104 (D.D.C. 2013), *aff'd*, 561 F. App'x 13 (D.C. Cir. 2014). The D.C. Circuit has "imported Title VII's prima facie case and burden-shifting regime to the FMLA retaliation context." *Gordon*, 778 F.3d at 161 (citing *Gleklen v. Democratic Cong. Campaign Comm., Inc.*, 199 F.3d 1365, 1367–68 (D.C. Cir. 2000)). "The elements of a prima facie case of FMLA retaliation are the well-known triad: (1) the employee 'engaged in a protected activity under this statute'; (2)

the employee 'was adversely affected by an employment decision'; and (3) 'the protected activity and the adverse employment action were causally connected.'" *Id.* (quoting *Gleklen*, 199 F.3d at 1368). The only issue in dispute here is whether Kelly's assertion of his FMLA rights and his position's elimination were causally connected.

Where an employer has proffered legitimate, non-discriminatory reasons for the employment action, "the *McDonnell Douglas* framework—with its presumptions and burdens—disappear[s], . . . and the sole remaining issue [is] discrimination *vel non*."[3] *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 142–43 (2000) (internal quotation marks and citations omitted). Consequently, "to survive summary judgment the plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory [or retaliatory] reason." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (alteration in original) (quoting *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003)). "'[A]ll of the evidence,' in turn, means 'any combination of (1) evidence establishing the plaintiff's prima facie case; (2) evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff, such as independent evidence of discriminatory statements or attitudes on the part of the employer.'" *Musgrove v. Gov't of D.C.*, 775 F. Supp. 2d 158, 169

---

[3] That framework, as the Supreme Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), operates as follows: "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the [action in question].' Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 804).

(D.D.C. 2011) (quoting *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006)), *aff'd*, 458 F. App'x 1 (D.C. Cir. 2012).

Kelly argues that Defendants retaliated against him for using his FMLA leave by doing away with his job.[4] But there is insufficient evidence in the record to support an inference of retaliation. To begin with, there is no evidence in the record that calls into question Defendants' proffered legitimate reason for eliminating his position: that they did so for budgetary reasons. Def. Mot. at 13; Def. Reply at 3. In fact, they assert, budgetary problems also required the school to reduce salaries for all non-teaching staff, significantly reduce Clark's salary, and eliminate Clark's assistant's position. Def. Reply at 3. They also assert that that the school did not need two "deans of students," and that the school made the decision to eliminate Kelly's position because the other person who held the job made less money, had far more experience, and had already filled the role at the school by herself. *Id.* at 13. That person remains the sole "dean of students." Def. Reply at 3. Kelly has offered no evidence about the school's decision to eliminate his job that is inconsistent with or that undercuts these explanations. And "when the employer's proffered explanation is reasonable in light of the evidence, 'there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts, and

---

[4] In his motion, Kelly does not assert that Defendants retaliated against him in any other way, *see* Pl. Mot. at 30-1–30-5, and so he has waived any other argument in support of his retaliation claim. *See Public Employees for Environmental Responsibility v. Beaudreau*, 25 F. Supp. 3d 67, 129 (D.D.C. 2014). Nonetheless, in the Complaint, Kelly also alleged that Defendants retaliated against him by reducing his paid leave. ECF No. 1 at ¶ 60. The Court notes that even if Kelly had advanced this argument, summary judgment in favor of Defendants would still have been appropriate, for all the reasons already explained above. Defendants have proffered a legitimate, nonretaliatory reason for reducing the amount of paid leave reflected on Kelly's pay stub, supported by an affidavit and other documentary evidence. Def. Facts ¶¶ 25–34. Kelly disputes this explanation, but he has not pointed to any facts that undermine it or suggest that it was a pretext for retaliation. *See* Pl. Facts ¶¶ 25–34.

summary judgment is appropriate.'" *White v. Tapella*, 876 F. Supp. 2d 58, 68 (D.D.C. 2012) (quoting *Beyah v. Dodaro*, 666 F. Supp. 2d 24, 31 (D.D.C. 2009)).

None of the other evidence on which Kelly relies creates a genuine issue of material fact as to his retaliation claim, either. He points out that he was told that his job was being eliminated in June, about two weeks after his FMLA leave expired. Pl. Mot. at 30-2.[5] And indeed, "[t]emporal proximity is often found sufficient to establish the requisite causal connection" between a retaliatory motive and an adverse employment action. *Gleklen*, 199 F.3d at 1368. But not on the record here, where Defendant's proffered legitimate reasons for the action are wholly unchallenged. *See Alford*, 945 F. Supp. 2d at 108. Moreover, the end of the school year in June presents a natural time for the school to have implemented staffing reductions necessitated by a budget shortfall.

Kelly also cites the February 21, 2016, email Clark sent to him as "direct" evidence of Clark's retaliatory intent. Pl. Mot. at 30-2. But Clark sent the email to every non-teaching administrative official in the school, and in it, he did not reference the FMLA or medical leave in any way. In scattershot fashion, Kelly also references his harmonious relationship with Clark before he took his FMLA leave, *id.* at 30-2–30-3; his office being cleared out without his knowing, *id.* at 30-3–30-4; and Clark's statement, overheard by Kelly, that he was being fired, *id.* at 30-4. But none of this evidence creates an inference that Defendants eliminated Kelly's job in retaliation for his taking FMLA leave—especially in light of Defendants' uncontroverted legitimate reason why they did so. As such, summary judgment is appropriate in favor of Defendants on Kelly's FMLA retaliation claim.

---

[5] Kelly appears to have erred in assigning page numbers to his brief, as five pages are marked as page 30. The Court will refer to them as 30-1, 30-2, 30-3, 30-4, and 30-5 to clarify which page 30 it is citing.

### B. Kelly's DCHRA Claim

The DCHRA prohibits employers from discharging or otherwise discriminating against an employee on the basis of sex. D.C. Code § 2-1401.11(a)(1). "The burden-shifting analysis of *McDonnell Douglas Corp. v. Green* . . . is applicable to D.C. Human Rights Act claims." *Gleklen*, 199 F.3d at 1367 (citation omitted). The inquiry, similar to that for Kelly's FMLA retaliation claim, is whether Kelly has demonstrated that Defendants' proffered non-discriminatory reason for eliminating his job is untrue, and that in fact, Defendants were motivated by discrimination on the basis of Kelly's sex. And again, the Court considers all of the evidence in conducting its inquiry. *Musgrove*, 775 F. Supp. 2d at 169. The prima facie case for a DCHRA sex discrimination claim is (1) that the plaintiff was a member of a protected class; (2) that the employee experienced an adverse employment action; and (3) that "the unfavorable action gives rise to an inference of discrimination." *Wiley*, 511 F.3d at 155. Again, the parties focus on the last element.

Kelly alleges that Defendants discriminated against him by eliminating his position. In Kelly's view, Clark was inclined to punish men who took medical leave, because Clark viewed men as the stronger sex and therefore looked more unfavorably on their absence. Defendants respond, once again, that a budgetary shortfall—as opposed to Kelly's sex—was the reason they eliminated his position. For Kelly's claim to survive Defendants' summary judgment motion, then, he must create a genuine issue of material fact as to whether this budgetary reason was a pretext for sex discrimination. And for all the reasons already discussed, he has utterly failed to show that it was pretextual. This, ordinarily, is enough to grant summary judgment for an employer. *See White*, 876 F. Supp. 2d at 68.

In addition, the other evidence on which Kelly attempts to rely fails to sustain an inference that his job was eliminated for a discriminatory reason. In particular, Kelly references

purported comparator evidence. Of course, such evidence may suggest discriminatory intent if the comparator was similarly situated, engaged in the same protected activity, and was treated more favorably than the plaintiff. *Id*. at 69–70. However, where the comparator did not hold the same position or was otherwise not similarly situated, "an inference of falsity or discrimination is not reasonable." *Montgomery*, 546 F.3d at 707. And such is the case with both alleged comparators here: two female school employees who also took medical leave, but whose jobs were not eliminated. Pl. Mot. at 32.

The first alleged comparator, the other "dean of students," did not engage in the same protected activity as Kelly because she did not take FMLA leave at all; she took only accrued paid leave during one month over the summer, after school had adjourned for the year. Therefore, her case does not provide an apt comparison. *See Carter-Frost v. Dist. of Columbia*, 305 F. Supp. 3d 60, 74–75 (D.D.C. 2018) (granting summary judgment for an employer on a retaliation claim where the plaintiff offered no evidence that her purported comparators engaged in protected activity). The second alleged comparator did not hold the same position as Kelly—her job involved analyzing students' standardized tests. As such, she was not similarly situated. *Id*. Therefore, neither woman's case helps to create the inference that Defendants discriminated against Kelly due to his sex when they eliminated his job.

None of the other evidence to which Kelly cites creates an inference of sex discrimination, either. As referenced earlier, he alleges that Clark harbored an "ingrained belief which he continually expressed . . . that women are the weaker sex and men are supposed to take care of the women, and that men are innately better leaders than women which requires men to undertake leadership roles in their relationship with women." *See* Pl. Mot. at 32. He argues that as a result, Clark was more lenient toward female employees who were absent from work. *Id.*

Perhaps relatedly, he also claims—based solely on his own deposition testimony—that Clark approved less generous FMLA leave for men than he did for women. *Id.* But an allegation of discriminatory intent based "self-serving testimony alone . . . is insufficient to survive a motion for summary judgment." *Musgrove*, 775 F. Supp. 2d at 170.

Finally, Kelly asserts that Clark had male employees, but not female employees, supervise the students' walk from the school to public transportation. Pl. Mot. at 32. Defendants dispute this account with two declarations, from Clark and another school administrator, averring that female employees shared in this task. *See* ECF No. 20-1, Defendants' Ex. 14, Declaration of Alisha Roberts, ¶ 57; ECF No. 20-1, Defendants' Ex. 17, Declaration of Dr. Marco Clark, ¶¶ 6–9. Kelly has offered no evidence beyond his own assertion that only men participated in this activity. But even if it happened to be the case that only men were assigned this job, it would hardly, on the entire record here, raise an inference that Defendants eliminated Kelly's position due to sex discrimination. Therefore, summary judgment is appropriate in favor of Defendants on Kelly's DCHRA claim.

## IV. Conclusion

For all of the above reasons, the Court will grant Defendants' Motion for Summary Judgment, ECF No. 20, and deny Plaintiff's Cross-Motion for Summary Judgment, ECF No. 67. A separate order will issue.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: February 4, 2019